UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT CHARLES TILLITZ,<br><br>              Petitioner,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>              Respondent. | Case No. C05-5144RJB<br>          CR94-5074RJB |
| CRAIG CARRINGTON,<br><br>              Petitioner,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>              Respondent. | Case No. C05-5286RJB<br>          CR89-88RJB<br><br>ORDER |

This matter comes before the court on petitioner Robert Charles Tillitz's motion for a Writ of Error Audita Querela (C05-5144RJB, Dkt. 1) and on petitioner Craig Carrington's Motion for Modification of an Imposed Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(2) (C05-5286RJB, Dkt. 1). The court has considered the pleadings filed in support of and in opposition to the motions and the file herein. Because both Mr. Tillitz and Mr. Carrington request resentencing pursuant to *United States v. Booker*, 125 S.Ct. 738 (2005), even though the requests are brought to the court based upon different theories, it is appropriate that the court consider the petitions together.

ORDER
Page - 1

## PROCEDURAL HISTORY

**Mr. Tillitz.** In 1998, Mr. Tillitz was convicted after a jury trial of (a) conspiracy to import hashish in violation of 21 U.S.C. § 963 (count one); (b) conspiracy to distribute hashish in violation of 21 U.S.C. § 846 (count two); (c) importation of hashish in violation of 21 U.S.C. § 952 and 18 U.S.C. § 2 (count sixteen); (d) possession of hashish with intent to distribute in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 (count seventeen); and interstate and foreign travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952 (counts eight, ten, eleven, twelve, fifteen and eighteen). At the sentencing hearing on August 14, 1998, this judge determined that, based on the evidence presented during the trial, more than 6,000 kilograms of hashish were involved in these offenses, resulting in a total offense level of 38. The court also applied a four-level enhancement for leadership role. Based upon a total offense level of 42, and a Criminal History category of I, the court found the resulting Sentencing Guidelines range to be 360 months to life in prison. The court then sentenced Mr. Tillitz to 360 months of imprisonment, to be followed by five years of supervised release, and imposed a fine of $2 million.

On September 17, 1999, following an appeal, the Ninth Circuit U.S. Court of Appeals affirmed Mr. Tillitz's conviction and sentence. *United States v. Tillitz*, No. 98-30229 (9th Cir. 1999). On December 29, 1999, the Ninth Circuit denied Mr. Tillitz's petition for rehearing with suggestion for rehearing en banc. *Id.* Mr. Tillitz filed a petition for *certiorari* with the United States Supreme Court, which denied the petition on October 2, 2000, and denied his petition for rehearing on November 6, 2000.

On May 15, 2001, Mr. Tillitz filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. *Tillitz v. U.S.A.*, C01-5257RJB. That motion attacked the conviction on three grounds: (1) that the jury failed to determine drug quantity beyond a reasonable doubt, relying on *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); (2) that Mr. Tillitz was denied choice of counsel at arraignment; and (3) that his waiver of the right to counsel was invalid. After staying the case pending the issuance of the Ninth Circuit's *en banc* decision in *United States v. Buckland*, 227 F.3d 1173 (9th Cir. 2002), on March 22, 2002, this court denied the Section 2255 motion as time-barred, and in an alternative holding, denied the motion on the merits. Judgment was entered on March 25, 2002. C01-5257RJB, Dkt. 38 and 39. On April 12, 2002, this court denied Mr. Tillitz's motion for reconsideration. *Id.*, Dkt. 43. On

July 26, the court denied a Certificate of Appealability. On February 28, 2003, the Ninth Circuit issued a Mandate dismissing the appeal and denying a Certificate of Appealability. *Id.*, Dkt. 55.

On July 25, 2003, Mr. Tillitz filed a Petition for a Writ of Mandamus, asserting jurisdiction under the All Writs Act; 28 U.S.C. §§ 1651, 1361, 1331; and the Fifth, Sixth, and Eighth Amendments of the Constitution. *Tillitz v. U.S. District Court for the Western District of Washington*, C03-5411RJB. On August 1, 2003, the court determined that the petition was a second or successive motion under 28 U.S.C. § 2255, and dismissed the motion without prejudice, subject to the requirement that Mr. Tillitz obtain and include with any subsequent 28 U.S.C. § 2255 motion he files with this court an order from the Ninth Circuit U.S. Court of Appeals authorizing this court to consider the motion. *Id.*, Dkt. 2. Mr. Tillitz filed an appeal of this court's order dismissing the motion without prejudice. On October 7, 2004, the Ninth Circuit issued a Mandate affirming the district court order. *Id.*, Dkt. 9.

On February 17, 2004, Mr. Tillitz filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title 28 U.S.C. § 2255. *Tillitz v. U.S. District Court for the Western District of Washington*, C04-5078 RJB. Mr. Tillitz contended that he had recently discovered from the court's criminal docket three parties who had never been disclosed to him. Mr. Tillitz claimed that he was never afforded the opportunity to confront these individuals at trial, and that his conviction and sentence are unconstitutional under the Fifth, Sixth, and Eighth Amendments to the Constitution. On February 19, 2004, the court dismissed the motion without prejudice, subject to the requirement that Mr. Tillitz obtain and include with any subsequent 28 U.S.C. § 2255 motion he files with this court an order from the Ninth Circuit U.S. Court of Appeals authorizing this court to consider the motion. *Id.*, Dkt. 2. Mr. Tillitz then filed a Motion for Relief from Order Under F.R.Cv.P. Rule 60(b)(6) or Alternatively Notice of Appeal; on March 5, 2004, the court denied the motion and also denied a Certificate of Appealability. *Id.*, Dkt. 6. Mr. Tillitz appealed to the Ninth Circuit. On April 4, 2004, the Ninth Circuit issued a Mandate denying Mr. Tillitz a Certificate of Appealability; the Ninth Circuit informed Mr. Tillitz that, if he wished to file a second or successive motion under 28 U.S.C. § 2255, he must first move the Ninth Circuit for an order authorizing the district court to consider the motion. *See Robert Charles Tillitz v. United States*, CCA No. 04-35211. Mr. Tillitz filed a petition for a Writ of Certiorari with the Supreme Court, and that petition was denied on June 1, 2004.

1      On June 30, 2004, Mr. Tillitz filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title 28 U.S.C. § 2255 (¶6)(3). *Tillitz v. United States District Court*, C04-5381RJB. In the motion, Mr. Tillitz claimed that he should be resentenced pursuant to the decision of the United States Supreme Court in *Blakely v. Washington*, 524 U.S. 296 (2004); and requested that the court assume jurisdiction under 28 U.S.C. § 3582(c)(2), in the event that the court did not find that it had jurisdiction to consider the Section 2255 motion. In that motion, Mr. Tillitz claimed that the court made a four level adjustment under the Sentencing Guidelines for Mr. Tillitz's role in the offense; and that, under *Blakely*, that adjustment made the sentence invalid because the sentencing factor was found by a judge rather than a jury. On July 20, 2004, the court dismissed the case without prejudice, subject to the requirement that Mr. Tillitz obtain and include with any subsequent 28 U.S.C. § 2255 motion he files with this court an order from the Ninth Circuit U.S. Court of Appeals authorizing this court to consider the motion. On September 1, 2004, Mr. Tillitz filed an application for authorization to file a second or successive § 2255 motion with the Ninth Circuit. *See Robert Charles Tillitz v. United States*, CCA No. 04-74402. This request was based upon the Supreme Court's decision in *Blakely v. Washington*, 524 U.S. 296 (2004). On February 15, 2005, the Ninth Circuit denied the motion for authorization to file a second or successive 2255 motion. *See Robert Charles Tillitz v. United States*, CCA no. 04-74402.

       On March 2, 2005, Mr. Tillitz filed the instant motion for a Writ of Error *Audita Querela*, requesting that he be resentenced, based upon the United States Supreme Court's decisions in *United States v. Booker*, No. 04-104, and *United States v. Fanfan*, No. 04-105; 125 S.Ct. 738, 2005 WL 50108 (U.S. Jan. 12, 2005). C05-5144RJB, Dkt. 1. On March 29, 2005, the court appointed counsel to represent Mr. Tillitz in this case. *Id.*, Dkt. 4.

       **Mr. Carrington.** In 1990, Mr. Carrington was convicted by plea of guilty of one count of conspiracy to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. § 846 and 841(b)(1))B), and was sentenced to 324 months of imprisonment and a $20,000 fine. *USA v. Carrington*, CR89-00088RJB. Mr. Carrington appealed to the Ninth Circuit after the district court denied his motion to withdraw his guilty plea; the Ninth Circuit affirmed the district court judgment. He is currently incarcerated pursuant to the sentence imposed by this court in CR89-00088RJB.

On March 29, 1996, Mr. Carrington filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence. *Carrington v. USA*, C96-5302RJB. On August 16, 1996, the district court denied the motion, and the Ninth Circuit affirmed. *Id.*

On May 24, 1999, Mr. Carrington filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, arguing that his sentence was unconstitutional because it violated the *ex post facto* clause. *Carrington v. USA*, C99-5288RJB. On August 20, 1999, the district court denied the motion, and a Certificate of Appealability was denied on September 21, 1999. *Id.*

In July 2004, Mr. Carrington filed a request for a Writ of Error *Coram Nobis*, arguing that his counsel was ineffective because he allowed Mr. Carrington to be illegally sentenced for conspiracy. *Carrington v. USA*, C04-5500RJB, Dkt. 1. On August 30, 2004, the court issued an order, concluding that the request was a second or successive motion under 28 U.S.C. § 2255, and dismissing the petition without prejudice, subject to the requirement that Mr. Carrington obtain and include with any subsequent 28 U.S.C. § 2255 motion he files with this court an order from the Ninth Circuit U.S. Court of Appeals authorizing this court to consider the motion. *Id.*, Dkt. 4. On December 27, 2004, the Ninth Circuit denied a Certificate of Appealability. *Id.*, Dkt. 12.

On April 15, 2005, Mr. Carrington filed the instant Motion for Modification of an Imposed Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(2), requesting that he be resentenced pursuant to the decision of the Supreme Court in *United States v. Booker*, 125 S.Ct. 738 (2005). *Carrington v. U.S.A.*, C05-5286RJB, Dkt. 1. On May 16, 2005, counsel was appointed to represent Mr. Carrington. *Id.*, Dkt. 5.

## DISCUSSION

**1. Motions**. Mr. Tillitz contends in this motion for writ of *Audita Querela* that his sentence is invalid under *United States v. Booker*, 125 S.Ct. 738, 767 (2005), because (1) it was based upon the then-mandatory Sentencing Guidelines, which the Supreme Court held in *Booker* to be advisory, rather than mandatory; and (2) it was based upon facts that he did not admit and were not found by a jury beyond a reasonable doubt.

Mr. Carrington claims in his motion that he should be resentenced pursuant to 18 U.S.C. § 3582(c)(2) because the decision in *Booker* effectively reduced his sentencing range when the Supreme Court made the Sentencing Guidelines discretionary rather than mandatory. Mr. Carrington also argues

ORDER
Page - 5

that, in the event that the court determines he is not entitled to relief pursuant to Section 3582(c)(2), he is entitled to the *Audita Querela* relief requested by Mr. Tillitz.

**2. Sentencing Law Post-Apprendi**. In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely v. Washington*, 524 U.S. 296, ___, 124 S.Ct. 2531, 2537 (2004), the Supreme Court stated: "Our precedents make clear, however, that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." In *United States v. Booker*, 125 S.Ct. 738, 756 (2005), the Supreme Court applied the concepts articulated in *Apprendi* and *Blakely*, and held that the Sentencing Guidelines violated the Sixth Amendment. That outcome followed from the conclusion that the Sixth Amendment precludes a judge from enhancing a sentence based on extra-verdict findings, other than the fact of prior conviction, in a mandatory sentencing regime. *Id*. at 748-49. A majority of the Court remedied the Sixth Amendment infirmity in the federal sentencing scheme by making the Sentencing Guidelines, in essence, advisory. *United States v. Booker*, 125 S.Ct. at 764.

*Booker* expressly provided for its application to all cases on direct review. *Id*. at 769. In *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005), the Ninth Circuit set out the procedure to be used to consider the application of *Booker* in those cases in which a defendant failed to preserve a Sixth Amendment claim at the time of sentencing. In those cases, the defendant bears the burden of demonstrating that there is a reasonable probability that he would have received a different sentence had the district court known that the Sentencing Guidelines were advisory. *Id*., at 107. Under *Booker* and *Ameline,* relief in the form of at least a limited remand, is therefore available to all pending direct criminal appeals, whether the claim is based upon the Sixth Amendment or is a challenge to the mandatory application of the guidelines. *See United States v. Moreno-Hernandez*, 419 F.3d 906, 916 (9th Cir. 2005).

The rule is different for cases such as those of Mr. Tillitz and Mr. Carrington, in which a *Booker* error is raised on collateral review. In *United States v. Cruz*, 2005 WL 2243113 (9th Cir. 2005), the Ninth Circuit concluded *Booker* did not apply retroactively on collateral review to convictions that became final prior to *Booker's* pronouncement, reasoning that *Booker* announced a new rule of criminal procedure that

did not qualify as watershed rule within the exception to the rule of general non-retroactivity announced in *Teague v. Lane*, 489 U.S. 288, 310 (1989).

**3. Mr. Carrington's Request for Relief under 18 U.S.C. § 3582(c)(2).**

Mr. Carrington contends that his sentence is unlawful, and he requests relief under 18 U.S.C. § 3582(c)(2).

18 U.S.C. § 3582 provides as follows:

**§ 3582. Imposition of a sentence of imprisonment**

**(a) Factors to be considered in imposing a term of imprisonment.**--The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation. In determining whether to make a recommendation concerning the type of prison facility appropriate for the defendant, the court shall consider any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2).

**(b) Effect of finality of judgment**.--Notwithstanding the fact that a sentence to imprisonment can subsequently be--

   **(1)** modified pursuant to the provisions of subsection (c);
   **(2)** corrected pursuant to the provisions of rule 35 of the Federal Rules of Criminal Procedure and section 3742; or
   **(3)** appealed and modified, if outside the guideline range, pursuant to the provisions of section 3742;

a judgment of conviction that includes such a sentence constitutes a final judgment for all other purposes.

**(c) Modification of an imposed term of imprisonment**.--The court may not modify a term of imprisonment once it has been imposed except that--

   **(1)** in any case--
      **(A)** the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
         **(i)** extraordinary and compelling reasons warrant such a reduction; or
         **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
      **(B)** the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

ORDER
Page - 7

> **(2)** in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.
>
> **(d)** Inclusion of an order to limit criminal association of organized crime and drug offenders.--The court, in imposing a sentence to a term of imprisonment upon a defendant convicted of a felony set forth in chapter 95 (racketeering) or 96 (racketeer influenced and corrupt organizations) of this title or in the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 801 et seq.), or at any time thereafter upon motion by the Director of the Bureau of Prisons or a United States attorney, may include as a part of the sentence an order that requires that the defendant not associate or communicate with a specified person, other than his attorney, upon a showing of probable cause to believe that association or communication with such person is for the purpose of enabling the defendant to control, manage, direct, finance, or otherwise participate in an illegal enterprise.

*Emphasis in the original.*

Mr. Carrington contends that (1) because the Supreme Court's decision in *Booker* lowered the mandatory sentencing range for his offenses, the court should resentence him pursuant to 18 U.S.C. § 3582(c)(2); (2) 18 U.S.C. § 3582(c)(2) provides the only remedy to correct his sentence because direct appeal offers only speculative relief when a guideline is ambiguous and § 2255 proceedings provide essentially no relief for the incorrect application of the guidelines; and (3) interpreting § 3582(c)(2) broadly preserves to the district court a portion of its inherent power to correct a sentence it has imposed. C05-5286RJB, Dkt. 9.

The government opposes Mr. Carrington's motion, arguing that (1) because his sentence was not based upon a sentencing range subsequently lowered by the Sentencing Commission, there is no basis for the motion under 18 U.S.C. § 3582(c)(2); and (2) if the court determines that the motion should be characterized as a § 2255 motion, it should be dismissed as a second or successive motion that has not been authorized by the Ninth Circuit. C05-5286RJB, Dkt. 10.

18 U.S.C. § 3582(c)(2) provides that the court may reduce a term of imprisonment if the sentencing range has subsequently been lowered by the Sentencing Commission. The Sentencing Commission did not lower the sentencing ranges for Mr. Carrington's crimes. The statute does not authorize the court to reduce a term of imprisonment based upon a Supreme Court decision. Moreover, the *Booker* decision held that the Sixth Amendment precludes a judge from enhancing a sentence based on extra-verdict findings, other than the fact of prior conviction, in a mandatory sentencing regime; and that

the Sentencing Guidelines are advisory; *Booker* did not lower a sentencing range. Mr. Carrington cannot obtain relief under 18 U.S.C. § 3582(c)(2).

**4. Mr. Tillitz and Mr. Carrington's Request for Writ of *Audita Querela*.** On March 2, 2005, Mr. Tillitz filed a motion for a Writ of Error Audita Querela, requesting that he be resentenced, based upon the United States Supreme Court's decisions in *United States v. Booker*, No. 04-104, and *United States v. Fanfan*, No. 04-105; 125 S.Ct. 738, 2005 WL 50108 (U.S. Jan. 12, 2005). C05-5144RJB, Dkt. 1.

On May 23, 2005, the government filed a response to the motion, contending that this writ is not available for relief otherwise available pursuant to 28 U.S.C. § 2255 and should be dismissed, or in the alternative, that the motion be recharacterized as a § 2255 motion and dismissed or transferred to the Ninth Circuit U.S. Court of Appeals because it is a second or successive petition. C05-5144RJB, Dkt. 11.

On September 28, 2005, Mr. Tillitz filed a reply memorandum, arguing that the writ of *Audita Querela* should be granted because (1) the All Writs Act and the common law writ of *Audita Querela* allow district courts to provide relief from unconstitutional judgments, sentences or their consequences where habeas relief has been and remains unavailable; (2) a writ of *Audita Querela* should be available to Mr. Tillitz because *Booker* relief is unavailable to him under 28 U.S.C. § 2255 for the sentencing error; and (3) the equities of the case, in combination with independent legal grounds, favor granting the writ and resentencing of Mr. Tillitz. C05-5144RJB, Dkt. 23.

On October 6, 2005, Mr. Carrington filed a supplemental memorandum, requesting that, if the court finds that he is not entitled to relief pursuant to 18 U.S.C. § 3582(c)(2), Mr. Tillitz's motion for Writ of *Audita Querela* be applied to Mr. Carrington as an alternate basis for resentencing. C05-5286RJB, Dkt. 9.

In *United States v. Valdez-Pacheco*, 237 F.3d 1077 (9th Cir. 2001), the Ninth Circuit held that a federal prisoner cannot challenge a conviction or sentence by way of a petition for a writ of *audita querela* if the prisoner's claims could be raised in a motion pursuant to § 2255. The court reasoned as follows:

> At common law, the writ of audita querela permitted a judgment debtor to obtain equitable relief from a legal judgment because of some defense or discharge arising after the entry of the judgment. 7 Am.Jur.2d Audita Querela § 1 (1997). Audita querela has been expressly abolished in civil cases by the Rules of Civil Procedure. See Fed.R.Civ.P. 60(b). The writ, or a modern equivalent, at least potentially survives in the federal criminal context, however, under the Supreme Court's decision in *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954) and the All Writs Act. See Doe v. INS, 120 F.3d 200, 203 (9th Cir. 1997); 28 U.S.C. § 1651(a) ( "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of

ORDER
Page - 9

their respective jurisdictions and agreeable to the usages and principles of law.").

In Morgan, the Court decided that Rule 60(b) did not abolish a federal prisoner's right to petition for the related common law writ of coram nobis because such a petition is part of the original criminal case, not a separate civil proceeding. *Morgan*, 346 U.S. at 505-06 n. 4. The Court further concluded that § 2255 did not encompass the entire field of postconviction relief and that, in the proper circumstances, coram nobis remained available to invalidate a defective federal criminal conviction. Id. at 511.

*United States v. Valdez-Pacheco*, 237 F.3d at 1079.

Common law writs, such as *coram nobis* and *audita querela*, survive only to the extent that they fill gaps in the current systems of postconviction relief. *Id.* "[A] federal prisoner may not challenge a conviction or sentence by way of a petition for a writ of audita querela when that challenge is cognizable under § 2255 because, in such a case, there is no "gap" to fill in the postconviction remedies." *Id.* at 1080. This is so even if the petitioner is precluded from filing a Section 2255 motion by the limitations of the Antiterrorism and Effective Death Penalty Act of 1996 , Pub.L. 104-132, tit. I, § 105, 110 Stat. 1214, 1220 (AEDPA) (codified in relevant part at 28 U.S.C. §§ 2255). *Id.*

Mr. Tillitz argues that, in contrast to the *Valdez-Pacheco* petitioner whose claims were clearly and previously cognizable under § 2255, Mr. Tillitz's *Booker* claim has never been available to him because of the combined operation of the lack of any *Booker* decision for him to rely upon (until January 12, 2005), the time limits and bars affecting direct appeals and collateral attacks, and the decision in Cruz analyzing the anti-retroactivity principles of *Teague* as they relate to *Booker* claims in § 2255 motions. C05-5144RJB, Dkt. 23. "Unlike *Valdez-Pacheco*, in which no actual or legitimate gap in relief existed, Mr. Tillitz currently serves a sentence imposed under a system now understood by all to be unconstitutional, yet whose path to relief is blocked because *Booker* did not exist until just recently and *Cruz* now interprets *Teague* to bar retroactivity." Id. at 6-7.

Mr. Carrington argues that the retroactivity analysis conducted in the collateral context of *Cruz* does not apply to Mr. Carrington's situation because Mr. Carrington has filed a motion to reopen his criminal case pursuant to a writ of *audita querela*; and that *Booker* should be applied retroactively. C05-5286, Dkt. 12.

Petitioners' arguments are unpersuasive, in light of the decisions of the Ninth Circuit that this court is compelled to follow. In *United States v. Valdez-Pacheco*, 237 F.3d 1077 (9th Cir. 2001), the Ninth Circuit held that a federal prisoner cannot challenge a conviction or sentence by way of a petition for a writ of *audita querela* if the prisoner's claims could be raised in a motion pursuant to § 2255. Although *Booker* was decided after Mr. Tillitz and Mr. Carrington's convictions became final, either of these petitioners could have raised, at sentencing and on direct appeal, the issues that underlie *Booker*: the sentence enhancements determined by a judge rather than by a jury beyond a reasonable doubt; and the mandatory application of the Sentencing Guidelines. Mr. Tillitz and Mr. Carrington did not specifically raise these issues at sentencing and on direct appeal. A writ of *audita querela* is not available to Mr. Tillitz or to Mr. Carrington because there are no gaps to fill in the post-conviction remedies, and Ninth Circuit law prevents them from obtaining relief by a common law writ.

**5. Relief under 28 U.S.C. § 2255.** Both Mr. Tillitz and Mr. Carrington are requesting that the court vacate, set aside, or correct their sentences. A prisoner in custody pursuant to a judgment and sentence imposed by the federal court, who claims the right to be released on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court that imposed the sentence to vacate, set aside or correct the sentence. 28 U.S.C. § 2255. The motions requesting relief under 18 U.S.C. § 3582(c)(2), and requesting a writ of *audita querela* are attempts to maneuver square pegs into round holes. Mr. Tillitz and Mr. Carrington's requests should be construed as motions to vacate, set aside, or correct sentences under 28 U.S.C. § 2255.

28 U.S.C. § 2255 provides a limitation on a prisoner who attempts to file a second or subsequent motion under that section.

> Under 28 U.S.C. § 2255, a second or successive motion must be certified as provided in section 28 U.S.C. § 2244 by a panel of the appropriate court of appeals to contain–
>
> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255. See also the procedure set forth in 28 U.S.C. § 2244.

ORDER
Page - 11

Mr. Tillitz previously filed motions to vacate, set aside or correct his sentence. *See Tillitz v. U.S.A.*, C01-5257RJB (motion under 28 U.S.C. § 2255); *Tillitz v. U.S. District Court for the Western District of Washington*, C03-5411RJB (petition for writ of mandamus that the court considered to be a motion under Section 2255); *Tillitz v. U.S. District Court for the Western District of Washington*, C04-5078 RJB (motion under 28 U.S.C. § 2255); and *Tillitz v. United States District Court*, C04-5381RJB (motion under 28 U.S.C. § 2255, and in the alternative, request for relief under 28 U.S.C. § 3582(c)(2)).

Mr. Carrington previously filed motions to vacate, set aside or correct his sentence. *See Carrington v. USA*, C96-5302RJB (motion under 28 U.S.C. § 2255); *Carrington v. USA*, C99-5288RJB (motion under 28 U.S.C. § 2255); and *Carrington v. USA*, C04-5500RJB (request for writ of error *coram nobis* that the court considered to be a motion under Section 2255).

The current motions before the court are successive motions under 28 U.S.C. § 2255. This court is without jurisdiction to consider these motions, since the court has not received the appropriate authorization from the Ninth Circuit, as required by 28 U.S.C. § 2255. Before this court can entertain those motions, Mr. Tillitz and Mr. Carrington must obtain an order from the Ninth Circuit U.S. Court of Appeals authorizing this court to consider them. The problem for Mr. Tillitz and Mr. Carrington is that *Booker* contains a new rule of constitutional law, but that rule has not been made retroactive by the Supreme Court to cases, like these, on collateral review.

The court notes that 28 U.S.C. § 2255 includes a time limit for filing a motion under that section. However, since the court does not have jurisdiction over the second or successive motions in this case, that issue is not before the court.[1]

Mr. Tillitz and Mr. Carrington's motions for to vacate, set aside or correct their sentences should be transferred to the Ninth Circuit to determine whether this court can consider the motions.

**6. Other Possible Relief**. The Ninth Circuit recently granted a motion to recall a mandate in a case that raised issues under *Blakely* and *Booker*, stating as follows:

> This case involves "extraordinary circumstances" sufficient to justify our recall of the mandate, *Calderon v. Thompson*, 523 U.S. 538, 550, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998); *see also Nevius v. Sumner*, 105 F.3d 453, 460-61 (9th Cir. 1996), because: (1) the sentencing judge

---

[1] The time limit included in 28 U.S.C.§ 2255 may be subject to equitable tolling. *See Calderon v. United States District Court for Central District of California (Beeler)*, 128 F.3d 1283, 1288-89 (9th Cir.1997), *cert. denied* 118 S.Ct. 899 (1998).

ORDER
Page - 12

expressed explicit reservations on the record about the sentence required under the previously mandatory Sentencing Guidelines; [FN1] and (2) the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), foreshadowing its holding in *United States v. Booker*, --- U.S. ----, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), was rendered before the mandate issued. [FN2] Accordingly, we recall the mandate, vacate the sentence, and remand to the district court for resentencing pursuant to *Booker*, *United States v. Ameline*, 409 F.3d 1073, 1078-85 (9th Cir. 2005).

FN1. The sentencing judge is on the record saying: "[T]his is the kind of case that causes a court like myself a great deal of agony because the sentencing ranges are extraordinarily high. I was--you know, you are always shocked to see these. Without the acceptance of responsibility, there may have been a low end sentence calculated at 262 months. You know, that is huge.... I mean, we are talking about serious consequences ...."

FN2. Our decision in *United States v. King*, 419 F.3d 1035 (9th Cir. 2005) (per curiam), where we addressed *Booker* in denying the defendant's motion to recall the mandate, is distinguishable because neither of the special circumstances that we highlight in Crawford's case were present in King. At the same time, however, in stressing that our decision here rests on both the sentencing judge's expressed misgivings about the sentence required by the mandatory Guidelines as well as the relative timing of the Supreme Court's *Blakely* decision and the termination of our appellate jurisdiction, we do not suggest that these same elements must always be present in order for a mandate to be recalled. Rather future panels will necessarily evaluate the existence of "extraordinary circumstances" warranting the recall of a mandate based on the facts of their individual cases.

*U.S. v. Crawford*, 422 F.3d 1145 (9th Cir. 2005).

At his sentencing on August 14, 1998, Mr. Tillitz objected to the guideline recommendation in the presentence report. C05-5144RJB, Dkt. 1, Attachment B, at 12-13. In response to Mr. Tillitz's objection, the court stated as follows:

> THE COURT: Well, your objection to the guidelines is noted.
>
> It might interest you to know, Mr. Tillitz, that I ruled in this court a long time ago that it was my opinion that these guidelines were contrary to the United States Constitution. That issue has been laid to rest contrary to my view by the United States Supreme Court. So these guidelines, in spite of your view on the legality of them and my view on it, they are part of the law of the land that bind me and I must follow that.
>
> THE DEFENDANT: What case was that where you made your ruling on?
>
> THE COURT: I don't even remember the name of it. It was shortly after the guidelines came into effect. It's past history now and it's of no assistance to us.

*Id.*, at 13-14. Based upon the mandatory Sentencing Guidelines in effect at the time, the court sentenced Mr. Tillitz to 360 months of imprisonment, followed by five years of supervised release.

At Mr. Carrington's sentencing on October 23, 1990, the court stated as follows:

> You know, let me just say something, I guess, for the record or the benefit of people that are interested.
>
> I hear the plea all the time from defense lawyers, and once in awhile from the government, that the guidelines are not fair as applied to an individual case and there ought to be a different

ORDER
Page - 13

result–it's more often from the defendant than from the government, but I have heard it both ways–and that this is proposed to be a court of justice and I ought to do justice as I see it instead of following the law. I don't view my role that way. I'm stuck with bad law and criminal defendants are stuck with bad law and the rest of society is stuck with bad law. If this is bad law, then we are stuck with it. Like I mentioned before, garbage in, garbage out, and I feel frustrated by these long sentences. It's contrary to the idea that one can pay a penalty for a crime and put it behind them within a reasonable period of time. But I guess the lawmakers have decided that the drug scourge in this country is serious enough that people who get caught up in this activity should be sentenced for lengthy periods that in some cases are tantamount or even greater than a life sentence under the state law.

I have been sentencing felons for 21 years, and in the last couple of years I'm faced with these guidelines, and it's very frustrating because it has diminished my responsibility and my authority. But the reason for these guidelines is to do exactly that. That is, to diminish the judge's discretion. I think that I must, if I am to do my job right, I've got to find the facts as I find them and apply the guidelines, being the law, to those facts, and that's the way you reach a conclusion. I can't twist the facts because I want to come to a different conclusion.

Dkt. 9, Exh. A, at 379-80. Mr. Carrington was sentenced to 324 months of imprisonment and a fine.

The first of the "extraordinary circumstances" factors set forth in *Crawford* is present in the Tillitz and Carrington cases, and distinguishes these cases from *United States v. King*, 419 F.3d 1035 (9th Cir. 2005). The second factor is absent only because of the accident of the timing of *Blakely* and *Booker.* While it appears to this court that Mr. Tillitz and Mr. Carrington's cases present extraordinary circumstances, only the Ninth Circuit can recall its own mandate.

The court also notes that, in a prior motion under 28 U.S.C. § 2255, Mr. Tillitz unsuccessfully raised the issue that his sentence was invalid because the jury failed to determine drug quantity beyond a reasonable doubt. *Tillitz v. U.S.A.*, C01-5257RJB. Mr. Tillitz also unsuccessfully raised the issue of invalidity of his sentence because the judge rather than a jury found a sentencing factor (four level enhancement for role in the offense) in a prior Section 2255 action. *Tillitz v. United States District Court*, C04-5381RJB. However inartfully pled and argued in those cases, the *Apprendi* issues were raised by Mr. Tillitz before *Booker* was decided in 2005. It is therefore possible that Mr. Tillitz may have raised issues in his prior cases sufficient to be considered "extraordinary circumstances" warranting recall of the mandate.

Neither of the petitioners in this case has filed a motion to recall the mandate, but that distinction may be more form rather than substance. Whether such an avenue may be available to Mr. Tillitz and/or Mr. Carrington is for the Ninth Circuit to decide.

**7. Comments by the Court.** Both Mr. Tillitz and Mr. Carrington's sentences may equal life in prison. Those sentences may have been appropriate at the time they were imposed, or they may not have been. At the time the sentences were imposed, the court was narrowly restricted in exercising discretion

ORDER
Page - 14

under the then-mandatory Sentencing Guidelines. Both Mr. Tillitz and Mr. Carrington were sentenced pursuant to a sentencing scheme that was unconstitutional. The mandatory nature of the guidelines is unconstitutional now, and it was unconstitutional at the time Mr. Tillitz and Mr. Carrington were sentenced. Yet no apparent relief, or even an opportunity for relief, appears to be available for them because *Booker* relief has not been made retroactive by the Supreme Court.

Finally, the court summarizes the situation with regard to Mr. Tillitz and Mr. Carrington: A Sentencing Guidelines scheme was adopted by Congress and implemented by the United States Sentencing Commission on November 1, 1987. *See* Pub.L. No. 98-473, § 235(a)(1), 98 Stat. 1987, 2031-32 (1984) and Pub.L. No. 99-217 § 4, 99 Stat. 1728 (1985). Many judges, including the undersigned, believed that the Sentencing Guidelines were contrary to the requirements of the U.S. Constitution. *See*, for example, *U.S. v. Nordall*, Western District of Washington Case No. CR 87-67B. Nevertheless, the Supreme Court, in its wisdom, found that the guidelines passed constitutional muster. *See Mistretta v. United States*, 488 U.S. 361(1989) (holding that Sentencing Guidelines were constitutional, amounting to neither excessive delegation of legislative power nor the violation of the principle of separation of powers).

Many defendants, including Mr. Tillitz and Mr. Carrington, were sentenced under the mandatory guidelines scheme, and many, including Mr. Tillitz and Mr. Carrington, are still incarcerated under mandatory guideline sentences.

In *Booker*, in 2005, the Supreme Court, again in its wisdom, determined that the mandatory application of the Sentencing Guidelines did not, in fact, pass constitutional muster, but that discretionary use of and reference to the guidelines in imposing a sentence did not violate the Constitution. The Supreme Court did not, however, make *Booker* retroactive, to apply to defendants like Mr. Tillitz and Mr. Carrington.

During the period of the guidelines' mandatory life–1987 to 2005–judges, like the undersigned, did their best to apply the law, assuming the constitutionality of the guidelines, and often sentencing defendants to sentences that were inappropriate under any law or theory of sentencing except the guidelines. District judges, in other words, tried to follow the law, even if it appeared to lead to injustice.

Now, under *Booker*, it is clear that the guidelines sentencing scheme was unconstitutional all along. It follows that defendants, still incarcerated under an unconstitutional sentencing scheme, would seek resentencing, even knowing that, on resentencing, longer sentences might be imposed. Yet, because of retroactivity rules, defendants serving unconstitutional sentences are offered no relief, no remedy, and no justice.

Trial judges, more than anything, want to do the right thing. We understand our obligation to follow the law, but deeply–and even desperately–hope that the law will lead to justice. If we are part of an injustice, we want to set it right, even if it involves a great deal of extra work. To quote Gerry Spence:

> [S]ometimes a judge doesn't know how to get justice . . . . [T]he judge has to just sit up there and watch justice fail right in front of him, right in his own courtroom, and he doesn't know what to do about it, and it makes him feel sad . . . . Sometimes he even gets angry about it.

Gerry H. Spence, *Of Murder and Madness: A True Story*, 490 (1983).

This judge, sad and a little angry, would welcome an opportunity to resentence these defendants to a constitutional and legal sentence.

Nevertheless, it is hereby

**ORDERED** that Mr. Tillitz's motion for a Writ of Error *Audita Querela* (C05-5144RJB, Dkt. 1) and Mr. Carrington's Motion for Modification of an Imposed Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(2)(C05-5286RJB, Dkt. 1) are **CONSTRUED** as motions to vacate, correct or set aside sentences under 28 U.S.C. § 2255, and are hereby **TRANSFERRED** to the United States Court of Appeals for the Ninth Circuit to determine whether this court may consider the motions as successive motions under 28 U.S.C. § 2255, or whether one or both petitioners is entitled to other relief, such as withdrawal of the mandate.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 3rd day of November, 2005.

Robert J. Bryan
United States District Judge